All right, Ms. Alexander, you may proceed. Thank you, Your Honors. Good morning. I'd like to reserve five minutes for rebuttal of my 20 minutes. Thank you. My name is Stephanie Alexander, and I'm here for Appellants, Urban Outfitters, Inc., and Century 21 Department Stores. My focus today is going to be primarily on the grant of summary judgment in favor of the plaintiffs. I think that's the key issue in the case. And summary judgment was improperly granted on the issue of copying. The issue of substantial similarity can't be granted in favor of a plaintiff on summary judgment. To prove copying, there are two elements necessary, and that's access and substantial similarity of the works. Substantial similarity has two elements, or two components, and that's the extrinsic test, which is the objective test, and the intrinsic test, which is the subjective test. The intrinsic test requires, is that, pardon me, is whether an ordinary person would find substantial similarity in the total concept and feel of the works. That's this court's words in the L.A. Print-Ex v. Aeropostal case cited at length in the briefs. Cutting to the chase, this court has consistently held in published opinions that the intrinsic analysis prong is within the exclusive province of the jury. It held so in the L.A. Print-Ex case I just referenced. The exact language was that it's solely a question for the jury in that case. In the Funky Films case, the court similarly held that an ordinary person's subjective impressions of the similarities between two works is exclusively the province of the jury. In any of those cases, did the court find the two works to be strikingly similar? They did not, to my recall. What if we believe these are strikingly similar? If you believe they're strikingly similar, that only goes to the prong of access, and I cite that to the Sell case, S-E-L-L-E. Striking similarity can only give rise to an inference of access, which is a different element, and I'll talk about that in just a moment, but I think that they're two different things. Striking similarity does not take the place of the intrinsic test. Okay, so a couple of questions about the cases that you cited. It's the case, isn't it, that in neither of those cases was the objective test met, and so the courts were talking about if the objective test isn't met, you can't find striking similarity. Isn't that correct? Well, again, my recollection of those cases is in L.A. Printext specifically, summary judgment was granted against the plaintiff in favor of the defendant because the court found that it subsumes the profits of the jury on the intrinsic test, and if the court cannot grant summary judgment against a plaintiff on the intrinsic test, it can't grant summary judgment in favor of a plaintiff on the intrinsic test. Either way, you're taking it away from the jury. My question was about the objective test. The objective test is only one of the two components. Right, and if you can't find that the objective test is met, then the courts were saying in both of those cases a judge can't reverse that by going to the intrinsic test and saying it's strikingly similar. Now, how do you deal with the 20th Century Fox case? The 20th Century Fox case? Fox film, yeah. In that case, I guess I'm not sure what component of that case that you're referring to. I'm trying to preserve the right of a district judge to grant summary judgment when he or she sees that there's something that's strikingly similar where it would be so obvious that the case shouldn't proceed, and as I read the 20th Century Fox film case, that holds where the things are so overwhelmingly identical that the possibility of independent creation is excluded, then a judge can grant summary judgment. Well, in theory, I think that a judge can grant summary judgment. You can have cases where there is – On the intrinsic test. Where the intrinsic test is met for different reasons, not here. What would those different reasons be? Because I thought you were stating an absolute rule before, so this sounds like a shift. I think that the court's prior decisions state an absolute rule. But 20th Century Fox doesn't. It says the opposite. Well, 20th Century Fox, I think, takes into consideration, and my recall of that case is that case, the court reversed summary judgment. Well, counsel, let me read you a sentence from the opinion at pages 12, 13, 29, and 13, 30. Quote, we do not imply that summary judgment is never appropriate in copyright infringement action. End quote. Doesn't that say there may be an appropriate case? The question is whether this is one. Well, my response to that is this isn't one. In many cases, there's – because you have to go back – But that means the rule is not absolute, does it not? Isn't that what we said in that case? Yes. Okay. But that case involves different facts. In that case, there was access. In this case, there is no access. And access and substantial similarity have an inverse relationship. If you have access, you need less substantial similarity. If you don't have access, which is the case here, then you need more substantial similarity. That puts the onus on the intrinsic prong and makes it very, very important. But what about Judge Oreck's point? I mean, we said in 20th Century Fox that if the works are overwhelmingly identical, then the possibility of independent creation is precluded. That is, again, because access was not disputed in that case, number one. And number two, in this case – But when we find striking similarity, we get over the problem of access. So I'm not sure why that is really the answer. If you get over the problem of access, you still need to go to the extrinsic and the intrinsic test. And in this case, striking similarity does not get you over the prong of access because the cases clearly hold that striking similarity does not completely obviate access. If there's no other evidence of access, there's an issue of fact as to whether or not the striking similarity is because of copying or because of something else. I thought the district court addressed that by finding that the evidence showed reckless indifference or reckless disregard because your client never bothered to check. On that, I believe that goes to a different issue, Your Honor. That goes to the issue of whether the infringement was willful. And I do plan to address that a little bit later. But just to give you a preview, that would place an onus on everybody creating a work to go out and determine whether there's a copyright, and we don't believe that's the law. But as for access here, it isn't that access was impossible. It's just that there isn't wide enough dissemination to assume access. I mean, your position isn't that it was impossible to access this, is it? Our position is that there was a disputed issue of fact on access, and summary judgment was improper. Well, disputed or just we don't know one way or the other. Exactly, exactly. There's not enough evidence of access, even if you find striking similarity, to say that summary judgment was proper on the issue of access. And there's not enough. So if you have a very complicated painting or something, very, very complicated graphic, and then you find another one that's exactly the same in every possible way. So I know you're going to argue that these are not exactly the same. But incredibly complicated creative thing, exactly the same. Your position is you can never decide that there must have been copying. It always has to go to a jury. Well, let me backpedal from that a little bit. In this case, we have an issue of a design on a fabric. And the infringing article is a garment. So if you go to the court's decision in the L.A. Print Text case, the court says you have to look at the total concept and feel. Our position is that you can't determine the total concept and feel from a piece of paper. Two issues there. Number one, the only evidence in front of the district court in the summary judgment phase was the piece of paper. And you have to look at the fabrics themselves. You have to look at the garment. You have to look at the total concept and feel. There's no complicated enough design that even if you only have it on paper, you couldn't say this must have been copied. There's just no possible way that two people could independently come up with this? I won't say that on a piece of paper or with respect to printed media. It could never be the case. I think that would be too extreme. But I think when you're talking about fabric designs, which is what is at issue here, that you have to look at the media in which the infringing article and the copyrighted material exists. And those are different things. I don't even know if this is possible, but I'm drawing an analogy to fingerprint comparison. Suppose that you take a photograph of each of the designs and you take those two photographs side by side and you apply a computer analytic software program that looks at the varying points of similarity and dissimilarity like we do when we're matching latent fingerprints to a fingerprint database. And the computer comes back and finds a 100% identical match. In that case, would it be impermissible for the district court to find striking similarity? If fabrics and garments are at issue, yes, I believe it would. Because the language this court has used is you have to look at the total concept and feel. And that would only satisfy the extrinsic component, the computer-generated program. You can't let a computer-generated program or a district court judge, the opinion of either, take the place in this context of the layperson. But I think you're back to arguing that you can never grant summary judgment in these cases, and that's not what 20th century Fox teaches us. I think in the context of this case, you can't grant summary judgment. And that's because we don't have the dress? Right. It's the total concept and feel. Why don't we have the dress? The summary judgment was granted in favor of plaintiff on the basis of plaintiff's papers. The dress was produced into court for the trial, but liability was already adjudicated by that point in time. What defendants would like is the opportunity to go back and have a jury look at the dress, look at the fabric, and make a decision as to whether, based on the total concept and feel, the works are substantially similar from the point of view of an ordinary layperson. That's what defendants believe they were deprived of when the district court granted summary judgment on... They didn't have both at the trial? They did have both at the trial, but... Both the side-by-side comparison photographs and the actual garment. But at that point, summary judgment had already been entered. I take your point on what was before the district court. Yes. It wasn't that they didn't exist. It was that plaintiffs supported their motion with only a piece of paper with printed images for which there was no foundation. I guess the question I was asking, and maybe it's not even a fair question, is that if the jury had both pieces of evidence before it and rendered a verdict adverse to your client, then where's the harm from the district court granting summary judgment on the side-by-side comparison of the photographs without having the garment? Well, the jury was instructed that there was already copying. That's what the difference is. So the jury... ...found willfulness. So go on. Relate the willfulness finding to what Judge Tallman was just asking. Okay. The jury... This went to the jury on the basis that there was already copying. So the jury did not get to decide whether or not there was copying. The jury didn't decide whether there was access. And it's our position there were disputed issues of fact with respect to access. And the jury didn't decide the substantial similarity. So it goes to the jury in the context of Urban has copied. And that was how the jury was instructed, that Urban has copied. It has been found to copy. So therefore, I think it's a very easy leap for a jury to find willfulness, even in the absence of knowledge, because they haven't had to determine whether or not Urban had access and actually copied. So I think that's the distinction. Willfulness requires a knowledge that one's conduct constitutes infringement. And there was no evidence offered at trial that Urban knew of the plaintiff's copyright at the time it created the dress. Evidence at trial, as you pointed out before, which does relate to willfulness, was that your client was recklessly indifferent as to whether or not they might be in violation of someone's copyright. That was the plaintiff's argument, yes. Plaintiff's argument was that Urban was recklessly indifferent. This court hasn't adopted a reckless indifference test, and we don't think that the evidence meets the reckless indifference standard, even if that is the appropriate test. I mean, this strikes me as sort of an ostrich with its head buried in the sand. Is your position that if that is the business modus operandi of the defendant, that that insulates it from liability? No, no. Our position is the law does not require – it's not a negligence standard. It's an intentional standard. You have to know of the copyright. Willfulness is not negligence. Exactly. It is intentional. It's intentional. Right, but why can't you have intentional willfulness by burying your head in the sand and deliberately avoiding making any inquiry at all as to whether or not we might be infringing others' copyrights? The evidence at trial was that Urban designs approximately 5,000 designs a year, that its designers don't have – in its experience, garment designs are not copyrighted, and it buys a substantial amount of art from which you could infer that it's purchasing the rights to the art. So those facts don't get you to – How does the QQ-692 play in here? Are you arguing that you had legitimate access to 692 and that's how this happened? I was trying to figure out if you were trying to argue something like that. No, we're not arguing we had access to QQ-692. The only possible overlap in the evidence at trial was that Urban spends a significant amount of money buying art from Milk Print. Milk Print is the original creator of the design at issue. So from that evidence, we believe that there was evidence from which there could have been – going back to the access prong, there could have been access from a third-party source. That was not – Wasn't the design copyrighted? So are you saying that Milk Print maybe gave it to you in an unauthorized way? I don't quite understand this access theory that gets you around the problem of what your theory is that you had access in some valid way. Well, the Milk Print evidence came in to trial because of the willfulness issue. If Urban bought a design from Milk Print that was similar to the design that the plaintiff copyrighted, that would not be willful infringement. So you're saying maybe Milk Print gave you something very similar? Yes. But you haven't found that very similar pattern? No. Do you want to say – Can I just ask one other question? So you said a little earlier, and you've said this in your briefs, that the district court relied on unauthenticated exhibits. And you say that the district court relied on Exhibit 1. But when I read the district court opinion, it looks like it relied on Exhibits 3 and 5, which were authenticated by a declaration. And I don't understand why you think the district court relied on Exhibit 1. The argument at the reporter's transcript, starting around page 7, the argument focused entirely on Exhibit 1. But the district court's opinion cites Exhibits 3 and 5. But when he heard argument on it, the only exhibit discussed was, again, the printed version, which we contended and objected at trial that that was the inappropriate evidence in a fabric case. And secondly, that was all that counsel argued. And did you object and say that's not authenticated? Yes. Okay, so what prevents the district court from going back to Chambers and finding the other exhibits that are authenticated and relying on those in the actual decision? Well, the same problem would apply in terms of those are just pieces of paper and you need to look at the actual design in the total comics. This is an evidentiary issue. How did the district court abuse its discretion in determining that 3 and 5 were authentic based on the declaration that supported the foundation for their admission? 3 and 5, I don't have an objection to 3 and 5. But number one was the focus of the argument. What's your answer to Judge Friedland's question? Why can't the district court go back after it renders its oral ruling in the courtroom and then writes a 20-page single-spaced summary judgment opinion citing to the properly admitted exhibit? Well, our response to that is it's still failing to take into account the total concept and feel, setting aside the evidentiary issue. But in your briefs, you argued even after they pointed out the other exhibits, you came back in your reply and still said the district court only relied on exhibit 1, which seems like a false statement in your brief, and it was quite troubling. So, I mean, now you're jumping to a different argument. You could have argued that's not the look and feel, but that's not what you argued. I'll go back and I'll look at the district court's opinion in just a moment. My recollection from the oral argument, again, starting at the reporter's transcript approximately page 7, is the total focus of the summary judgment argument was on exhibit 1, and there was repeated objections and there were objections that were filed, written objections that were filed to the consideration of exhibit 1. Even if the district court went and considered exhibits 3 and 5, our same argument would apply setting aside the evidentiary objections that that's not taken into account from the piece of paper, the total concept and feel of the work set issue. It's not really answering Judge Friedland's question, but you should reserve some time. You have about 19 seconds. Let's hear from the unit colleagues. Good morning, Your Honors. May it please the Court. Scott Burrows for the appellee. I want to start by identifying where in the evidentiary record Judge Otero referenced exhibit 3 and 5. It's at SCR 489. As indicated by Your Honors, the opinion referenced the properly authenticated exhibits, exhibits to which there was no objection. And I'd also like to correct a misstatement of law proffered by my colleague. In the Ninth Circuit, like all other circuits now, a finding of willfulness can be predicated upon a finding of reckless behavior. We cite International Shoe, In re Barboza, Louis Vuitton. Multiple cases have now found that reckless behavior, not intentional behavior, is sufficient to support a finding of willfulness. In fact, the case on the Ninth Circuit is now so strong, the Ninth Circuit Model Jury Instructions were recently amended to indicate that recklessness can satisfy the willfulness standard. Now, going to the substance of the arguments proffered by my colleague, the finding on the motion for summary judgment should not be disturbed. The designs are strikingly similar, as found by Judge Otero. But that evidence is buttress, and that finding is buttress, by the fact that no independent creation evidence has been proffered by Urban Outfitters. The case law that gives rise to the striking similarity doctrine indicates that striking similarity should be found when the designs are so similar that independent creation is precluded. Here, there's no evidence of independent creation, so it's easy for us to arrive at the fact that independent creation is precluded, given that the designs are extremely similar, very similar, as conceded by Urban Outfitters, and Urban Outfitters did not bother to present any evidence of independent creation. So the striking similarity... The district court didn't actually make a finding, as far as I can find it, saying strikingly similar. Do we need to do that ourselves, in your view? Because it seems like it's a bit of a gap in the reasoning. Well, when I argued the L.A. Printext case, which also addressed similarity between designs, the Ninth Circuit panel indicated that the Ninth Circuit is able to review the designs just as easily as the district court, and the Ninth Circuit can do that here, and look at the designs and find that they're strikingly similar, especially in light of the complete dearth of independent creation evidence. And your position is that we should do that? If necessary, you should. But I would proffer that a striking similarity analysis is not even necessary here, because, of course, as this panel knows, it can uphold Judge Otero's ruling on any basis, and sufficient evidence of access was presented at the summary judgment stage, to which we entered evidence that 14,000 yards of the Unicolor's design at issue was entered into the marketplace. And in a ruling that's not published, but a previous ruling by Judge Marshall in United Fabrics International Inc. v. Urban Outfitters, CV 10-7895 at Docket 79, the court finds, on summary judgment, Urban Outfitters liable for copyright infringement of a fabric design based in part on United Fabrics disseminating about 13,000-14,000 yards of fabric into the marketplace before the infringement. In that case, the court found, that was enough to permit a reasonable opportunity to access the design. And given that... Would we have to know, though, where it was distributed, and where they were collecting things? I mean, it's not clear to me we have enough to rule on that issue as a matter of law on this record. Agreed, Your Honor. But given that Urban Outfitters has failed to identify from where, from which market it obtained this design, I would submit that under the recent Live Nation v. Friedman ruling, that information is solely within the province of Urban Outfitters, that information being where they obtained the design. They have failed to identify from where they obtained the design. So it's impossible for my client to prove that Urban Outfitters obtained the design from the same market in which we disseminated the fabric. And I can provide the site, but it's Live Nation v. Friedman. In that case, the court recognized the long-standing rule of equity, whereby a party should not be forced to prove something that's purely within the province of the opposing party. And to the extent that Urban cannot identify for us from where it obtained this design, it initially told us it found the design at a vintage store, and then it later said that it found the design in a drawer somewhere. How is my client supposed to prove that that finding, that location, that provenance of the design, is from the marketplace in which we distributed the design? It's simply inequitable. So looking at everything holistically, which we should, there was a reasonable opportunity to access the design on the part of Urban. So we'll go back to striking similarity, if you would, because evidence of access is unnecessary if there's striking similarities, I understand it, from the Baxter case. So how do you address the argument that your colleague has made that the total concept and feel was lacking for Judge Otero because he didn't actually have the fabric to look at? Well, the design fails for three reasons, Your Honor. The first of which is that, and there's jurisprudence on this, it's axiomatic, the design at issue in a copyright case is what's deposited with the Copyright Office. In this case, a digital printout of the design was deposited with the Copyright Office. That was then compared with the garment, with images of the garment. But not at summary judgment, right? Oh, images of the garment. Images of the garment. If we would have attempted to submit fabric swatches, as we've attempted in cases in the past, we would have drawn an objection from Urban Outfitters that because the fabric had not been deposited with the Copyright Office, we were limited to only the deposit copy of the paper. So even with that, even conceding that it was paper copies and not the actual fabric, and as an aside, the jury did have the fabric in the garments and they did make a finding of willful infringement. Surely they would not have found willful infringement if they didn't find the designs to be infringing. It's an elevated charge. It's a higher standard. So that affirms that the District Court was correct in finding these designs to be strikingly similar. But beyond that, the differences identified by Urban Outfitters, the size, which is irrelevant, the color, which is also irrelevant, and the line renderings can be explained by the fact that we're comparing the deposit copy, which is a digital print on paper, with images of a garment. Of course there's going to be line rendering differences if you're comparing a digital print with its sharpness with fabric on which the ink runs, and there's issues in that regard. So there simply is no differences, and that was conceded by Urban Outfitters at deposition and its counsel. Its counsel indicated the designs were very similar, and during deposition, Urban indicated that the only differences were those three that I just mentioned. Can you explain the relationship between QQ-692 and PE-1130? Yes, Your Honor, and this takes me to my next point, which is I need to emphasize the difference between copyright and registration because too often copyright infringement cases are becoming copyright registration infringement cases. A copyright accrues, as Judge Tallman's panel indicated in Cosmetic Ideas since 1976, as soon as you commit the design or the artwork to a tangible form. Your copyright attaches at that point. A copyright registration is a formality. You send paperwork to the Copyright Office, and they approve it. And in many cases, this is not the first time I've stood before this court and addressed copyright registration issues. In many cases, too many cases, the courts will look at the formalistic requirements of a copyright registration and take action that's adverse to the artist or to the author. And that's despite numerous cases such as LA PrintEx, United Fabrics, Jules Jordan, Alaska Stock, that all indicate that issues with the registration are non-issues unless the error or putative error in the registration is material. It goes to something like the originality of the work. If I try to register Mickey Mouse and that registration issues for some reason, that can be invalidated because that's a material issue. But if the issue is not material, such as including something in Section 6B, as is at issue here, or not listing the titles, per Alaska Stock, LA PrintEx, and all these other cases, those issues are irrelevant. The Congress saw this problem of too many courts invalidating otherwise valid cases because of registration issues in 2008 and enacted the Pro-IP Act, which codified all this case law and makes clear that a copyright registration, the presumption that attaches to it, should not be disturbed unless there's a knowing inaccuracy that was made on purpose. That's two requirements. So I think you might be jumping ahead to the legal implication of my question. I was actually trying to just figure out, are these the same patterns, the two? 692 and 1130, are they identical? Are they different? I just don't even understand what these two things are. QQ692 is source artwork that was obtained by my client, Unicolors, to develop the artwork at issue. And when you say source artwork, is it also copyrighted? Or is there also a... This is where you're going. You're saying it doesn't matter. It existed already. But was it purchased? Do you have an ownership right, whether it's registered or not, in this 692? Yes, that's three questions. I'll address them in reverse order. Yes, we do have a written license from Milk Studio that provided, that assigns to us all the rights in the artwork. So yes, we do have those rights. It was not registered because there's no need to register something. Your copyright accrues as soon as it's made. And therein lies the rub in terms of this issue regarding the exclusion. The statute requires a party that's registering a collection to identify any pre-existing works. And Unicolors, in this case, did that. It said, well, we purchased the source artwork and we developed that source artwork into the design that's being registered. So we're going to indicate to the Copyright Office that there is source artwork. Now, this is in the instructions for the registration of copyright. It's at ER 347. And we have a nice red box around the instructions for this particular provision of the registration because it instructs the applicant to identify any pre-existing works on the application. But what's happened, and I don't want to get too far into the weeds, but the Copyright Office, at some point over the last five years, migrated the registration process from paper applications to online applications. And when it did that, it conflated Section 5 and 6 of the paper registration. So you'll see in the instructions, Section 5 is to identify any pre-registered works. And if you register a work once, you're not to register it again. So it makes sense, if you've already registered the work, that you would exclude it from a future registration. But Section 6 says to identify pre-existing works, works that had been published, works that you had purchased, that had not necessarily been registered. And on the paper registration, that's made clear. But as you can see from the registration issue in this case, it's a result of the electronic process. And the electronic process conflates those two. It conflates pre-existing works with pre-existing registered works. So to the extent that it says the material is excluded, that... Your position is the attempt was to list it as a pre-existing work. It ended up being listed as an excluded work. Absolutely. And even then, it was only the title of the work and it was only the source artwork that we then created this derivative from. And Streetwise and all these other cases say that if we have a derivative, a copyright in the derivative or a registration in the derivative, then we can sue for the underlying work. And this... The issue is so convoluted that the... Do you think they copied 1130 or 692 or does it not matter? Well, they absolutely copied PE1130 because the QQ design was not published. We marketed the PE1130 artwork because in this... Fabric is... Printing fabric is quite technical. You can't take a source artwork and simply print it on fabric. You have to develop it, format it, put it in repeat, and prepare it for printing. So the fabric that was published and printed by my client was PE1130. But could they have seen 692 some other way or could they have seen it in this registration itself? Well, no. You're not required to submit or deposit the prior works, the derivative works. You're only to deposit what you're seeking to register. So they... It wouldn't have been part of that. But in another case that Urban Outfitters is a party to, they are challenging the registry. And this is another copyright case where they're alleged of infringing an artist's rights in the design. They're challenging the copyright registration in that case because the plaintiff, the author, failed to identify the preexisting works. So what we've done in this case, in our registration, we've indicated that there are these other works that we incorporate into these final works. They're challenging it in that case for not filling out 6B or completing that section. So we have Urban taking two inconsistent positions in regard to this same technical requirement of the Copyright Act, and it's just not in the spirit and the policy of the act, which, as Judge Tolman indicated, Judge Tolman's panel indicated in the cosmetic ideas case, we're looking to reduce formalities and reduce these burdens that we impose on these artists in bringing their cases. These are copyright infringement cases. We should be focusing on, did the artist create the work? Was it copied? We should not be spending a lot of time and a lot of this, the district court's time, this panel's time, the Ninth Circuit's time, reviewing these copyright registrations for these formalities. The Pro-IP Act says so. Jules Jordan says so. Alaska Houghton says so. Hulka Poose says so. Every opinion on this issue of registration from the Ninth Circuit has made clear, has taught us, that the court should not be bogged down with these copyright formalities. It's the problems of the Copyright Office to look into that. The court should be looking at copyright infringement, not copyright registration infringement. Yet, in so many of these cases, that's the first attack of an infringer is to attack the registration. And courts still... Is this confusion about 5 and 6 that you're pointing to something that has happened a lot? Like, if we agree with you, do we need a published opinion on this 5 and 6 issue? I think you see where I'm going. That's exactly what we're asking for. The fact that Urban Outfitters itself is taking the opposite approach in two different cases regarding Section 6B, we're asking for this court to come out and say, not for the first time, but clearly, that if there is an issue regarding the name of the author, which is addressed in Jules Jordan, it's not material. If there's an issue regarding publication, if there's an issue regarding Section 6B, none of these issues, none of these putative errors should invalidate a registration in a copyright infringement case because the author is there to prove copyright infringement. And the formalities of a registration, which, as Judge Tolman's panel also noted in Cosmetic Ideas, this is a piece of paper that's often just sent before filing because it's a pre-filing registration. And Reid L. Selvier said, it's not even jurisdictional anymore. The formalities attendant to this registration process need to be reduced in order to stop what's become a chilling effect on authors bringing their rights because these artists are not lawyers. They don't have resources to parse what it means. Is this published? Is it pre-existing? They simply know they created something and someone stole it. And to jettison their cases because of this formality, it's just not in the spirit of the Copyright Act. I only wish I had known I was being as prescient as I was. And unless the panel has any further questions on any other issue, I have nothing further. Thank you very much. Thank you, Your Honors. All right. Counsel, I'll give you a couple minutes on rebuttal. Thank you, Your Honors. I know my time is short and I just wanted to make    Our issue is that there's a lot of work that's being done to make sure that there's a fair amount with the registration is that PE 1130 isn't in the registration. That's our issue. We're not saying that there was a mistake, We're not saying that Are you saying it needs to be named or that there was no picture of it? We're saying that it needs to be listed. All of the collective works that are listed that are part of the collection are listed on the registration and PE 1130 is not listed on the registration. You don't have to name the specific work in the collection? Well, we do, but if you have a registration that names all of the parts of the collection except for the one for which they're claiming was infringed, I think that gives rise to an issue of fact as to whether or not that one is in the collection. Why would the picture of it be there if it wasn't in the collection? The picture of it is not on the registration. The certificate of registration does not include the PE 1130 and it expressly excludes the source artwork. So we believe that we put forth enough evidence in the district court to demonstrate that it's at least an issue of fact as to whether the registration included the work which was... The application included the picture? Yes. The application included the picture, but the application included the picture under QQ692, which again was excluded. What's your response? I almost hate to ask the question, to the convoluted technical explanation of the switch from paper to computers? Well, my response is that I think our argument has been misconstrued. Our argument is that it's not there, number one, and number two, it was clearly excluded. But it's not there because there was an ambiguity in the instruction       No, I don't think that's true. I don't think that's true. I don't think that's true. I don't think that's true. I don't think that's not true. I don't think that's why it's not there. We don't agree that that's the case. I mean, it's a clerical error. At least there's no evidence that would meet our test of knowing falsity. I guess then the question is whether it's material. Our position is you don't get to knowing a fraud on the Copyright Office if there's an issue of fact as to whether it's included in the first place. The presumption doesn't arise, so for the purpose of summary judgment, you don't have the presumption arise, and you have to prove it up. That's our position, and that's our only position. We're not taking a position on the other. Counsel, your two minutes are up. Thank you very much. The case that's argued is submitted for decision, and we'll be in recess for ten minutes before we hear argument on the last case on the calendar. All rise.
judges: Tallman, Friedland, Orrick